UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CITY OF SEATAC,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>AVIS BUDGET CAR RENTAL LLC,<br><br>　　　　　　　　Defendant. | CASE NO. 2:25-cv-00081-LK<br><br>ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION |

This matter comes before the Court on Plaintiff City of SeaTac's Motion for Preliminary Injunction. Dkt. No. 20. The City seeks an order enjoining Defendant Avis Budget Car Rental LLC from using public roads to offload vehicles from large auto haulers around Avis's facility, contending that the practice poses a safety hazard. *Id.* at 1. Avis opposes the motion. Dkt. No. 21. For the reasons set forth below, the Court denies the motion.

## I.    BACKGROUND

**A.    Auto Haulers Parked in the Roadway Have Caused Problems in the City of SeaTac**

Avis owns and operates a rental car lot with an entrance located on South 160th Street in the City of SeaTac, Washington. Dkt. No. 20-3 at 2. South 160th Street is a thoroughfare running

east-west that intersects with 34th Avenue South. *Id.* Rental vehicles are transported to and from Avis's South 160th Street location using "large autotransporters or car haulers." *Id.* The haulers "can be up to 80 feet in length, 9 feet in width and carry 9 or more vehicles of varying sizes at one time." *Id.*

On April 18, 2024, a car hauler parked in the eastbound lane of South 160th Street, limiting the sight lines for motorists on that roadway and resulting in a three-vehicle collision. *Id.* at 2–3. The City received complaints throughout 2024 from city staff, residents, and motorists "regarding Avis's continuing use of the public roadway to offload its vehicles in this same dangerous manner." *Id.* at 3. City staff also "observed car haulers parked within South 160th Street, occupying the entire eastbound lane, creating safety hazards for motorists traveling on South 160th Street, as well as those coming downhill from 34th Avenue South." *Id.* City employees observed Avis auto haulers parked on South 160th Street and impeding traffic on March 10 and 12, May 20, and July 16, 2025. *Id.* at 3–4; Dkt. No. 20-4 at 1–5 (photographs of May 20 incident with a hauler parked in the middle of the roadway.[1] On September 2, 2025, a SeaTac resident complained to City of SeaTac police that an Avis auto hauler was parked on South 160th Street, "blocking [the] view for a left turn to be made from 34th Avenue South." Dkt. No. 20-2 at 2; *see also* Dkt. No. 20-5 at 3.

A City police officer states that he has "observed auto haulers parked on South 160th Street and using the roadway as the base to offload vehicles one by one into the Avis lot, more than once." Dkt. No. 20-5 at 2. He notes that "[t]he drivers' use of the roadway to offload vehicles into Avis'[s] lot poses safety hazards for motorists" traveling on both South 160th Street and 34th

---

[1] These exhibits are not marked or numbered as required by Local Civil Rule 10(e)(10)). The City also attached numerous other photographs purporting to substantiate its factual assertions regarding the auto haulers' blockages, *see* Dkt. Nos. 20-6–20-10, but these exhibits are not marked or numbered as required by Local Civil Rule 10(e)(10), nor are they specifically identified as supporting any particular affiant's declaration as required by Rule 10(e)(10). Therefore, the Court does not consider Docket Numbers 20-6 to 20-10. The Court warns that future violations of applicable rules may result in sanctions.

ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION - 2

Avenue South. *Id.* Specifically, the practice obstructs motorists' sightlines, "causing them to make illegal and dangerous passes," and motorists "coming down the hill from 34th Avenue South cannot turn left safely due to the auto haulers parking on South 160th Street." *Id.* Pedestrians who need to cross either street are also affected. *Id.* Although the officer has issued traffic infractions to haulers parked illegally, he is not at the site continuously. *Id.*

Avis does not employ any of the vehicle haulers who service the South 160th Street Avis facility. Dkt. No. 22 at 1–2. Instead, those drivers fall into one of three categories: "(1) haulers who deliver new vehicles purchased by Avis from the auto manufacturers, (2) haulers who pick up vehicles sold by Avis to buyer[s] (typically re-sellers), and (3) haulers [who] transport vehicles between Avis locations." *Id.* at 1. "Avis has no contractual relationship with the haulers in the first two categories," who are "retained by the auto manufactures and buyers." *Id.* at 1–2. The haulers in the third category "are contracted and scheduled (but not employed) by Avis." *Id.* at 2. Avis retains those haulers through third-party brokers "who use their own vehicles or subcontract with small trucking companies to perform the actual moves" of the vehicles. *Id.* Avis instructs the haulers "to deliver and pick up vehicles directly onto Avis's property and 160th and *not* onto the road." *Id.* Avis maintains policies "prohibiting the use of public streets for delivery or pickup of vehicles," it posts signs at its entrance, and it instructs its contracted guard service, Allied Security, "to intervene if haulers attempt to use the street for such activity, directing them to enter [Avis's] lot from South 160th Street or from the employee lot on International Boulevard." *Id.* In addition, public signs located on South 160th Street prohibit stopping, standing or parking on the roadway. Dkt. No. 20-5 at 1–2.

**B.     The City Filed Suit**

The City filed suit January 14, 2025. Dkt. No. 1. Two days later, the Court issued an Order to Show Cause why the complaint should not be dismissed for failing to establish subject matter

ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION - 3

1  jurisdiction, as the City had failed to allege Avis's citizenship. Dkt. No. 3. The City filed an
2  amended complaint on January 17, 2025. Dkt. No. 4.

3  The City asserts that under Article XI, Section 11 of the Washington State Constitution, it
4  has the authority to declare and abate a "public nuisance" such as the one Avis is creating. *Id.* at 5
5  (citing SeaTac Municipal Code ("SMC") § 7.15.010 (H)(1), (6) and § 1.15.175). The complaint
6  seeks an order declaring that "Avis's business practice of using the public roadway to offload
7  vehicles into its lot a public nuisance as defined by SMC 7.15.010 (H)(1) and (6)." *Id.* at 6. The
8  complaint also seeks a warrant to abate the practice under Section 7.48.010 of the Revised Code
9  of Washington, as well as recovery of all abatement expenses. *Id.* at 8–9. Finally, the City brings
10  a cause of action for negligence. *Id.* at 9.

11  On September 18, 2025, the City filed a motion for a temporary restraining order and a
12  preliminary injunction "enjoining Avis from using the public roadway, specifically, South 160th
13  Street, and 34th Avenue South, within the City of SeaTac, to offload vehicles from the transporters
14  or auto haulers effective immediately and until further notice." Dkt. No. 17 at 8. The Court denied
15  the motion on the same day, holding that "the City's lengthy delay [in filing the motion]
16  undermine[d] its claim for emergency relief" and that the City failed to show that it was entitled
17  to a preliminary injunction due its failure to support the factual contentions in its motion, among
18  other violations of applicable rules. Dkt. No. 19 at 3–4. However, the denial was "without prejudice
19  to the City's ability to refile their motion with evidentiary support and in compliance with the
20  Local Civil Rules and other applicable law." *Id.* at 4.

21  The City filed this motion for a preliminary injunction on September 29, 2025. Dkt. No.
22  20. Avis filed a response, Dkt. No. 21, and the City did not file a reply.

23
24

ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION - 4

## II. DISCUSSION

### A. Legal Standard

To obtain a preliminary injunction, plaintiffs must establish (1) that they are "likely to succeed on the merits," (2) that they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in [their] favor," and (4) "that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). The mere "possibility" of irreparable harm is insufficient; instead, the moving party must "demonstrate that irreparable injury is likely in the absence of an injunction." *Id.* at 22.

The Ninth Circuit employs a "sliding scale" approach, under which the four elements are balanced "so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). For example, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. The moving party bears the burden of persuasion and must make a clear showing that it is entitled to such relief. *Winter*, 555 U.S. at 22.

Although individual appellate panels have questioned the usefulness of the distinction, the Ninth Circuit distinguishes between "mandatory" and "prohibitory" injunctions. *Hernandez v. Sessions*, 872 F.3d 976, 997–98 (9th Cir. 2017). Prohibitory injunctions "aim to preserve the status quo by preventing a party from taking action," while mandatory injunctions "alter[] the status quo by requiring a party to take action and thus place[] a higher burden on the plaintiff to show the facts and law clearly favor the moving party." *Youth 71Five Ministries v. Williams*, 153 F.4th 704, 717 (9th Cir. 2025) (citation modified). Here, the City seeks a prohibitory injunction that precludes Avis from parking and offloading its vehicles in the public roadway. *See* Dkt. No. 20 at 8. Avis

does not appear to have used the public roadway in this manner before the action challenged in the complaint occurred; thus, Avis seeks to restore "the legally relevant relationship between the parties before the controversy arose." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) (emphasis omitted).

### B.     The City Is Not Entitled a Preliminary Injunction

The City seeks an order enjoining Avis from "park[ing on] and us[ing] the public roadways within the City of SeaTac to offload vehicles from the auto haulers into its rental car lot until further order of the Court." Dkt. No. 20-1 at 2. It argues that it has tried to resolve the issue with Avis both before and after filing this lawsuit, but the parties have been unable to settle the dispute. Dkt. No. 20 at 4–5; *see also* Dkt. No. 20-2 at 2–3.

The City further contends that it is likely to succeed on the merits of its public nuisance claim under Section 7.48.120 of the Revised Code of Washington because "Avis's business practice 'unlawfully interferes with, obstructs or tends to obstruct, or render[s] dangerous for passage of [a] street or highway.'" Dkt. No. 20 at 6. It also avers that Avis's "obstruction of the public streets endangers or injures motorists and pedestrians inside the city limits of City of SeaTac and renders them insecure in life[.]" *Id.*[2]

Avis opposes the motion and responds that the City's motion is based on the mistaken premise that "Avis directs or condones improper and dangerous street use by vehicle haulers." Dkt. No. 21 at 4. It argues that instead of directing or condoning that practice, it prohibits haulers from "loading or unloading on public streets and takes affirmative steps to enforce this policy through signage and a contracted security service." *Id.* at 1. It further contends that the conduct of

---

[2] The City contends that in 2023, the haulers twice damaged new asphalt pavement along 34th Avenue South, south of the intersection with South 160th Street. Dkt. No. 20-3 at 2. However, because the City does not tie that issue to a likelihood of success on its public nuisance claim, *see* Dkt. No. 20 at 5–6, the Court does not address it here.

third parties, including independent contractors, cannot be imputed to it under nuisance laws or tort standards. *Id.* at 4. The City did not file a reply to rebut these arguments.

The City has moved for a preliminary injunction only on its state law public nuisance claim, Dkt. No. 20 at 5–6, so the Court analyzes the City's likelihood of success on that claim. As relevant here, a nuisance is defined as "unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the . . . health or safety of others, . . . or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage . . . any public . . . street or highway; or in any way renders other persons insecure in life[.]" Wash. Rev. Code § 7.48.120. Washington law further provides that a nuisance claim is "actionable"—i.e., it can be "the subject of an action for damages and other and further relief"—if the nuisance "is injurious to health or indecent or offensive to the senses, or an obstruction to the free use of property, so as to essentially interfere with the comfortable enjoyment of the life and property." *Id.* § 7.48.010. A plaintiff can demonstrate the existence of a *public* nuisance either by showing a violation of one of the statutorily enumerated nuisances in Section 7.48.140 or by showing that the nuisance "affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal," *id.* §§ 7.48.130, -.140. *See Joshua Ah Chan v. GrubHub Holdings Inc.*, No. C23-5744-BHS, 2024 WL 1209546, at *2 (W.D. Wash. Mar. 21, 2024); *Sauk-Suiattle Indian Tribe v. City of Seattle*, 525 P.3d 238, 243 (Wash. Ct. App. 2023). Section 7.48.140(4) declares that it is a public nuisance "[t]o obstruct or encroach upon public . . . streets . . . or to unlawfully obstruct or impede the flow of . . . passenger traffic[.]"

The City's motion does not cite either Section 7.48.130 or .140 or address their standards. *See generally* Dkt. No. 20. The Court follows the principle of party presentation and relies on the parties' framing of the issues. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020); *see also Todd R. v. Premera Blue Cross Blue Shield of Alaska*, 825 F. App'x 440, 442 (9th Cir.

ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION - 7

2020). Consequently, the Court will not guess whether the City is trying to assert a public nuisance claim under Section 7.48.130 or Section 7.48.140, nor will it make the City's arguments for it. *See Clark v. Sweeney*, No. 25–52, 2025 WL 3260170, at *1 (U.S. Nov. 24, 2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").

Moreover, even if parking and offloading the haulers on the public street creates a public nuisance, the City has not shown that Avis is legally responsible for it. The City contends that "[t]he drivers of the car haulers are employed or contracted by Avis. They deliver and pick up vehicles from the lot under Avis's control and directions." Dkt. No. 20 at 2. But those statements are supported only by the declaration of the City's counsel, who does not appear to have personal knowledge of the subject. Dkt. No. 20-2 at 1–2. Indeed, the City chose not to rebut the sworn declaration of Avis's Director of Operations in Washington that Avis (1) does not employ any of the haulers, (2) contracts only for the haulers who "transport vehicles between Avis locations," and (3) instructs those haulers not to use public streets for delivery or pickup of vehicles. Dkt. No. 22 at 1–2; *see also* Dkt. No. 13 at 2 (admitting that "that the drivers of the car haulers are mostly contracted by Avis" (some capitalization removed)); *id.* at 7 ("[The City]'s damages, if any, may have been proximately caused by third parties over whom [Avis] has no control."). Moreover, the City's legal conclusions about Avis's relationship with the drivers couched as factual allegations do not carry the City's burden. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("naked assertion[s]" devoid of "further factual enhancement" do not state a claim for relief (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

The City's motion does not set forth *any* basis for holding Avis liable for the actions of third parties or independent contractors, *see generally* Dkt. No. 20, and again, the Court will not

invent arguments for it, *Indep. Towers of Wash.*, 350 F.3d at 929. Even if the City had intended its "control and directions" argument, Dkt. No. 20 at 2, to imply an agency relationship, that too is unsupported factually or legally. "The general rule in Washington is that a principal is not liable for injuries caused by an independent contractor whose services are engaged by the principal." *Stout v. Warren*, 290 P.3d 972, 976 (Wash. 2012). "The burden of establishing the agency relationship rests upon . . . the party asserting its existence." *Hewson Const., Inc. v. Reintree Corp.*, 685 P.2d 1062, 1064 (Wash. 1984). The City has provided no evidence in support of an agency relationship between Avis and the haulers, the scope of that relationship, or the degree of control—if any—that Avis exercised over those third parties.[3] In light of these deficiencies, the City has failed to show that it is likely to succeed on the merits of its public nuisance claim. Consequently, the City is not entitled to a preliminary injunction and the Court need not address the other *Winter* factors. *See, e.g.*, *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018) (holding that a "plaintiff must make a showing on all four prongs to obtain a preliminary injunction" (citation modified)).

### III.  CONCLUSION

For the foregoing reasons, the Court DENIES the City of SeaTac's Motion for Preliminary Injunction. Dkt. No. 20.

Dated this 1st day of December, 2025.

*Lauren King*
Lauren King
United States District Judge

---

[3] The City's motion suffers from another deficit: even assuming that the drivers in the third category were acting as Avis's agents, there is no evidence that they were the ones who parked the haulers in the road or offloaded the vehicles in the road (as opposed to the drivers in the other two categories with whom Avis lacks even a contractual relationship). *See* Dkt. No. 22 at 1–2.